```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    |
ELZA E. ALMEIDA,                    |
                                    |
              Plaintiff,            |   06 Civ. 3923 (LLS)
                                    |
     - against -                    |   OPINION AND ORDER
                                    |
CARLOS AGUINAGA & CHRISTINA         |
     AGUINAGA BUENO,                |
                                    |
              Defendants.           |
                                    |
------------------------------------x
```

Defendants Carlos and Christina Aguinaga, who employed plaintiff Elza Almeida as a live-in domestic service employee from 1990 to December 2005, move for partial summary judgment dismissing her claims for overtime and "spread-of-hours" pay under the New York Labor Law § 650 et seq., and its implementing Minimum Wage Order for Miscellaneous Industries and Occupations, N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-1.1 to 142-2.25 (the "New York regulations").  In so doing, they do not attack Almeida's contract or fiduciary duty claims, and they concede that there are fact issues with respect to her pay during 2005.[1]

---

[1] Almeida's claims under the Fair Labor Standards Act ("FLSA") have been dismissed because she is exempt from FLSA overtime as a live-in domestic service employee and is not entitled to a regular rate of pay under the FLSA.  456 F. Supp. 2d 505, 507-508 (S.D.N.Y. 2006).

Background

For purposes of this motion, the Aguinagas concede that Almeida worked for them an average of 16.5 hours per day at all times open under the six year statute of limitations, N.Y. Lab. Law § 663(3).  According to Almeida's present statement of her claimed hours and wages,[2] from May 24, 2000 to June 2001 she worked six days, or 99 hours a week.  Although her chart shows that she was paid only $500 per week, she is bound by her deposition testimony that she began earning $100 a day in 1998 (Almeida Dec. 12, 2006 Dep. Tr. 138:15-23) and that when she worked six days a week she was paid for six days (id. at 133:23-134:6) ("Q: So am I correct, if you worked five days, you were paid for five days, is that right? A: Yes. Q: If you worked six days -- A: If I worked six, I would get paid for six.  If I worked seven, I would get paid for seven.").  See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment

---

[2] Attached to Almieda's affidavit in opposition to the motion is a chart that details her claimed wages and working hours for every week that she worked for the Aguinagas since May 2000. (Almeida May 16, 2007 Aff., App. 1.)  Because this chart is submitted under oath and is the more detailed presentation, it is accepted as the statement of her claims although her unsworn memorandum of law differs slightly.

motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.").

Almeida did not work for the Aguinagas from June to November 2001. She claims that in November and December 2001 she worked three days, or 49.5 hours a week, and was accordingly paid $300 per week.

Almeida claims that from January 2002 through December 2004 she worked five days, or 82.5 hours a week, and was paid $500 per week.

It is undisputed that Almeida was given $1,000 a year, or $19.23 per week, which the Aguinagas refer to as vacation pay. The Aguinagas assert, and she denies, that she was given double her daily wage when she worked on Christmas or New Years Day. Because of that factual issue, those claimed double-daily payments are disregarded on this motion, as is the vacation pay for November and December 2001 since the Aguinagas do not include it for that time period in their overtime calculation.

The above figures, together with other information (discussed below) are presented in tabular form in the attached Appendix.

1. Meal and Lodging Allowances

Under the New York regulations, the Aguinagas are entitled to credits of $1.75 for each of Almeida's three meals per day, and $2.20 for each day of lodging they provided to her, as payments toward her minimum wage.  12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.5(a)(1).

Almeida's argument that the meals and lodging were provided primarily for the Aguinagas' benefit (so that she could work longer hours) finds no support in the New York Labor Law or the New York regulations, which do not condition the meal and lodging allowance on the outcome of arguments about which party had the greater benefit from those accommodations.  The cases Almeida cites involve regulations under the federal FLSA, not New York law, and are therefore inapposite.

Nor does Almeida's assertion that her shared living quarters at the Aguinagas' home were "substandard" create an issue of fact.  With respect to the relevant time period, she states only that:

> From 1998, until my employment ended on or about December 6, 2005, I was forced to share a room with another domestic employee, and then ultimately had no choice but to sleep in the laundry area of the household, because of the substandard conditions of the shared room.  Indeed, Mrs. Aguinaga was aware that I dragged my mattress to the laundry area and slept there.

(Almeida May 16, 2007 Aff. ¶ 26.)  The New York regulations provide that "Lodging includes room, house or apartment, and means living accommodations which meet generally accepted standards for protection against fire, and all structural, sanitation and similar standards in State and local laws, codes, regulations and ordinances applicable to the premises."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.20.  Almeida has not claimed that the room the Aguinagas provided her violated any of those provisions.

In sum, as set out in the Appendix, from May 24, 2000 to June 2001, when Almeida worked six days a week, $31.50 per week for meals and $13.20 per week for lodging are counted towards her minimum wage; during November and December 2001, when she worked three days a week, $15.75 per week for meals and $6.60 per week for lodging are counted towards her minimum wage; and from January 2002 through December 2004, when she worked five days a week, $26.25 per week for meals and $11.00 per week for lodging are counted towards her minimum wage.

## 2. Overtime

The New York regulations required the Aguinagas to pay Almeida at least the $5.15 then minimum hourly wage for the

first 44 hours she worked per week, and 1.5 times the minimum wage, or $7.725, for each hour over 44 per week. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.1(a), 142-2.2. See <u>Ballard v. Community Home Care Referral Service, Inc.</u>, 264 A.D.2d 747, 748, 695 N.Y.S.2d 130, 131 (N.Y. App. Div. 2d Dept. 1999) (home health care aide excluded from overtime under the FLSA is entitled only to overtime at 1.5 times the basic minimum hourly rate, not 1.5 times her regular rate); <u>see generally</u> <u>Manliguez v. Joseph</u>, 226 F. Supp. 2d 377, 389 (E.D.N.Y. 2002) ("New York law, unlike FLSA, awards reduced overtime compensation for domestic employees").

Contrary to Almeida's contention, nothing in the New York regulations requires allocating her whole weekly pay to her first 44 hours of work, and thereafter granting her an additional $7.725 for each hour of overtime. The correct comparison is between the total amount of money and allowances for meals and lodging she received each week from her employers and the whole amount she was entitled to under the New York regulations.

Thus, as set out in the attached Appendix, from May 24, 2000 to June 2001, when Almeida worked 99 hours per week, she was entitled to $226.60 of minimum wage and $424.88 of overtime pay per week; during November and December 2001, when she worked 49.5 hours per week, she was entitled to $226.60 of minimum wage

and $42.49 of overtime pay per week; and from January 2002 through December 2004, when she worked 82.5 hours per week, she was entitled to $226.60 of minimum wage and $297.41 of overtime pay per week.  Because Almeida was paid, including meal and lodging allowances, more than the New York overtime regulation required from May 24, 2000 through December 2004, her claim for such overtime pay during that time period is dismissed.

### 3. Spread of Hours

The New York regulations also required the Aguinagas to pay Almeida "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours[.]"  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  "Spread of hours" is "the interval between the beginning and end of an employee's workday.  The spread of hours for any day includes working time plus time off for meals plus intervals off duty."  Id. § 142-2.18.

Accepting Almeida's assertion that she worked 16.5 hours every day, the Aguinagas were required to pay her $5.15 per day in spread-of-hours pay.  Thus, as set out in the Appendix, from May 24, 2000 to June 2001 when Almeida worked six days a week, the Aguinagas were required to pay her $30.90 per week in

spread-of-hours pay; during November and December 2001 when she worked three days a week, they were required to pay her $15.45 per week in spread-of-hours pay; and from January 2002 through December 2004 when she worked five days a week, they were required to pay her $25.75 per week in spread-of-hours pay.

Almeida argues that spread-of-hours pay is not merely an element in the calculation of her minimum total compensation required by the New York regulations, but an actual additional payment of $5.15 to be made to her for each work-day of over 10 hours, even if that day's pay already exceeded the required minimum wage, overtime rates and spread-of-hours pay. She relies on Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339-340 (S.D.N.Y. 2005). In Yang, the defendants asked the Court to consider a New York Department of Labor private party opinion letter, which stated:

> if the weekly wages actually paid to an employee equal or exceed the total of: (i) 40 hours paid at the basic minimum wage rate; (ii) overtime paid at the particular employee's overtime rate[*]; and (iii) one hour's basic minimum wage rate for each day the employee worked in excess of 10 hours, then no additional compensation is due.

Id. at 339. The Yang court declined to accept the Department of Labor's position, reasoning that:

---

[*] Yang was not a household domestic employee and hence received overtime at 1.5 times his regular rate, not 1.5 times the basic minimum $5.15.

> The effect of adopting the agency's interpretation would be to carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage. As this is a question of legal interpretation, deference is not required. Defendants do not offer any arguments that the regulation's language itself dictates this exception, and the Court sees none.

Id. at 339-340.

The language of the regulation requires one additional hour's pay at the minimum wage "in addition to the minimum wage required by this Part[.]" N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. That denotes the additional hour's pay as a supplement to an employee earning only the minimum required rates, not those employees whose pay is already more than the required rates plus the additional hour of minimum wage. Thus, the federal cases since Yang have not followed it, but have uniformly endorsed the Department of Labor's position. See Espinosa v. Delgado Travel Agency, No. 05 Civ. 6917 (SAS), 2007 WL 656271, at *1-2 (S.D.N.Y. Mar. 2, 2007) ("By its plain language, section 142-2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); Franklin v. Breton Int'l, Inc., No. 06 Civ. 4877 (DLC), 2006 U.S. Dist. LEXIS 88893, at *13 (S.D.N.Y. Dec. 11, 2006) (the spread-of-

hours provision "applies only to workers earning the minimum wage"); Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048 (GEL), 2006 WL 851749, at *21 (S.D.N.Y. Mar. 30, 2006) ("The plain text of § 142.4 [sic] ensures an additional wage only 'in addition to the *minimum* wage' required under New York law.  It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.").

The highest New York Court to address the issue, the New York Supreme Court, Appellate Division, Second Department, has also adopted the Department of Labor's interpretation.  See Seenaraine v. Securitas Sec. Serv. USA, Inc., 37 A.D.3d 700, 701-702, 830 N.Y.S.2d 728, 729 (N.Y. App. Div. 2d Dept. 2007) ("the Department of Labor's interpretation of the [spread-of-hours] regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language.  Thus, it is entitled to deference. . . . the plaintiff was not owed spread-of-hours compensation under the regulation."), followed in Jenkins v. Hanac, Inc., No. 06 Civ. 3592 (SJF), 2007 WL 1774641, at *2-3 (E.D.N.Y. June 20, 2007).

The "exception" perceived by the Yang court is illusory: no group of well-paid workers is carved out from getting more "minimum" pay, because the spread-of-hours provision is properly

limited to enhancing the compensation of those receiving only the minimum required by law.

As the Appendix shows, Almeida was paid, including the meal and lodging allowances, more than what the New York regulations required from November 2001 through December 2004. Thus, with respect to that time period, she is not entitled to be paid an additional $5.15 per day representing the "spread-of-hours" component.

With respect to the earlier May 24, 2000 to June 2001 time period, however, the figures do not foreclose her argument that she received less than what the New York spread-of-hours regulations required upon the assumption that she worked 16.5 hours a day, so the truth of that assumption must be tried out.

## Conclusion

The Aguinagas' motion for partial summary judgment is granted to the extent that Almeida's claims under New York law for overtime from May 24, 2000 through December 2004 and for spread-of-hours pay from November 2001 through December 2004 are dismissed.  To the extent the motion seeks dismissal of Almeida's spread-of-hours claim for the May 24, 2000 to June 2001 time period, it is denied.

Thus, the remaining claims are for spread-of-hours pay from May 24, 2000 to June 2001, for New York overtime and spread-of-hours pay in 2005 until Almeida left in early December, and for breach of contract and breach of fiduciary duty.

Counsel are directed to contact Courtroom Deputy Linda Thomas by telephone at (212) 805-0123 to schedule a conference for the setting of a date for the submission of the pre-trial order and for the trial of this action.

So ordered.

Dated: New York, NY
       August 15, 2007

                                          _____
                                             Louis L. Stanton
                                                 U.S.D.J.

## Appendix

| Time Period | Hours Worked Per Day | Days Worked Per Week | Hours Worked Per Week | Wages Per Week | Vacation Pay Per Week[1] | Meal Allowance Per Week | Lodging Allowance Per Week[3] | Total Weekly Wages and Allowances Per Week |
|---|---|---|---|---|---|---|---|---|
| May 24, 2000 – June 2001 | 16.5 | 6 | 99 | $600 | $19.23 | $31.50 | $13.20 | $663.93 |
| November 2001 – December 2001 | 16.5 | 3 | 49.5 | $300 | -- | $15.75 | $6.60 | $322.35 |
| January 1, 2002 – December 31, 2004 | 16.5 | 5 | 82.5 | $500 | $19.23 | $26.25 | $11.00 | $556.48 |

| Time Period | Minimum Wages Required Per Week[4] | Overtime Wages Required Per Week[2] | Spread of Hours Wages Required Per Week[6] | Total Wages Required Per Week | Shortfall or Above-Minimum Payment Per Week |
|---|---|---|---|---|---|
| May 24, 2000 – June 2001 | $226.60 | $424.88 | $30.90 | $682.38 | ($18.45) |
| November 2001 – December 2001 | $226.60 | $42.49 | $15.45 | $284.54 | $37.81 |
| January 1, 2002 – December 31, 2004 | $226.60 | $297.41 | $25.75 | $549.76 | $6.72 |

---

[1] $1,000 divided by 52 weeks.
[2] 3 meals per day at $1.75 each.
[3] $2.20 per day.
[4] $5.15 times the first 44 hours worked per week.
[5] $7.725 times the hours over 44 worked per week.
[6] $5.15 for each day with spread of hours of 10 or more.